UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAONA N.E., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-0597-D-BK |
| | § | |
| NANCY BERRYHILL, | § | |
| **Acting Commissioner of Social** | § | |
| **Security,** | § | |
| | § | |
| **Defendant.** | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Standing Order of Reference*, Doc. 19, this cause is now before the Court on the parties' cross-motions for summary judgment. Doc. 24; Doc. 25.  As stated herein, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A.    Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits under the Social Security Act ("the Act").  Plaintiff filed for benefits in July 2015, claiming that she became disabled in March 2014.  Doc. 18-6 at 2-3. Plaintiff's application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).  Doc. 18-3 at 2-4; Doc. 18-3 at 19-35; Doc. 18-5 at 5-8; Doc. 18-5 at 13-15.

### B.    Factual Background

Plaintiff was 38 years old at the time of the Administrative Law Judge's ("ALJ")

decision.  Doc. 18-3 at 35.  She had two years of college education and past relevant work

experience in the military as a medical logistics and convoy security specialist and also as a hotel

reservation clerk.[1]  Doc. 18-3 at 68-69.  In 2015, Plaintiff reported being able to (1) prepare

complete meals for her family; (2) take care of her child's basic needs, including school runs; (3)

attend church; (4) talk on the phone with friends and loved ones on a daily basis; (5) wash dishes

and clothes; (6) clean her bathroom; (7) pick up trash; (8) drive; (9) shop for up to four hours at a

time; (10) manage her money; and (11) take walks.  Doc. 18-7 at 29-32.  She stated that she

could walk for five miles before needing to rest and could pay attention for an hour, follow

spoken instructions, get along well with authority figures, and usually finish what she started.

Doc. 18-7 at 33-34.

In terms of her relevant medical history, the evidence of record reflects that Plaintiff

complained of lower back pain, an inability to stand/sit/walk for long periods of time or to

lift/carry heavy items, and she exhibited tenderness and decreased range of motion and was

diagnosed with (1) lumbar radiculopathy; (2) backache; (3) somatic dysfunction of the cervical,

thoracic, lumbar, and sacral regions; (4) lumbosacral neuritis; (5) lumbago; and (6) pain,

tingling, and numbness in her lower back and extremities.  Doc. 18-7 at 39, 42, 47; Doc. 18-11 at

3-4, 7-9, 11-12, 21, 41-42, 44-45, 47-50, 53-54, 67, 72-77, 80, 82-85, 87; Doc. 18-12 at 22, 24-

26, 34, 40; Doc. 18-15 at 11; Doc. 18-16 at 23-24, 35-40, 48-49, 51-54.

---

[1] Plaintiff receives benefits from the Veteran's Administration in connection with her military
service.  Doc. 18-17 at 2.

In March 2015, Plaintiff was prescribed a back brace, which she said improved her pain, and shortly thereafter, she received crutches that she had requested for her back pain. Doc. 18-7 at 52, 54; Doc. 18-11 at 80-81; Doc. 18-12 at 31. Plaintiff stated that her pain increased when she sat or stood for more than two hours, but walking did not cause her any pain, nor did pain prevent her from personal care activities. Doc. 18-11 at 53; Doc. 18-12 at 23.

X-rays of Plaintiff's lumbar spine indicated that the disc spaces were normal and no spondylosis or spondylolisthesis were present, while an MRI revealed no spinal canal or neuroforaminal narrowing at any level. Doc. 18-11 at 44, 53. A cervical spine x-ray revealed that the disc spaces were preserved, vertebral bodies were intact, and the paraspinal soft tissue was unremarkable. Doc. 18-11 at 53. Plaintiff stated that chiropractic treatment greatly improved her pain, and she generally rated her pain as zero-to-two on a scale of zero-to-ten. Doc. 18-11 at 48-50, 54, 72, 75-77; Doc. 18-12 at 39; Doc. 18-16 at 51. Her chiropractor recommended conservative treatment and opined that Plaintiff's outlook was "good for improvement and pain management." Doc. 18-16 at 52. Plaintiff also had full (or close to full) range of motion in her cervical and trunk regions, her gait, station, and coordination were largely normal, and she could heel/toe walk. Doc. 18-11 at 75-76, 84; Doc. 18-12 at 23-24; Doc. 18-16 at 48.

Additionally, during the time frame relevant to her onset date of disability, Plaintiff complained of (1) depression and mood swings; (2) manic and depressive episodes; (3) anxiety; (4) crying spells; (5) anger; (6) frustration; (7) violent episodes; (8) impaired sleep; (9) irritability; (10) self-destructive behavior; (11) impulsivity; (12) decreased energy; (13) poor hygiene; (14) impaired judgment, insight, and attention; (15) lack of appetite, focus, and ability to concentrate; (16) excessive worrying; (17) low self-esteem; (18) periods of instability and

isolating; and (19) impaired coping ability. Doc. 18-7 at 28-29, 35, 39, 42, 46-47, 51-53, 57, 60;
Doc. 18-9 at 38-39, 43, 48; Doc 18-10 at 8, 10, 18, 51-52; Doc. 18-11 at 24; Doc. 18-12 at 34;
Doc. 18-13 at 20, 23, 25, 33, 47, 64, 73, 75, 77, 80-82, 84-85; Doc. 18-14 at 2-4, 30-31; Doc. 18-
15 at 16-19, 21, 24, 37, 42-43, 49. Doc. 18-16 at 53-54.

 During this same time period, however, it was noted that (1) Plaintiff had no anger
outbursts or self-destructive or violent thoughts; (2) she did not have any suicidal, depressive, or
manic symptoms; (3) her thought process was logical and goal-directed; (4) her
memory/concentration/insight/ judgment were all intact; (5) she experienced no panic attacks;
(6) her depression was stable; (7) she was sleeping six-to-eight hours a night when she was
medication compliant; (8) she had a good appetite and the ability to do chores; (9) she was
feeling productive; (10) her mood had improved; (11) she used a planner to stay organized; (12)
she traveled out of state to see family; (13) she walked her dog; (14) she spent time with her
mother, child, and friends; (15) she took her son on vacation and to the park and had a birthday
party for him; (16) she took dance classes, and (17) she reported feeling a sense of
accomplishment since engaging in activities outside of the home. Doc. 18-9 at 31-54; Doc. 18-
10 at 23-24, 26; Doc. 18-10 at 59-61; Doc. 18-11 at 25, 29, 40, 46, 51; Doc. 18-12 at 19-21, 27,
31, 44, 47, 51; Doc. 18-12 at 61-63, 70-71; Doc. 18-12 at 89; Doc. 18-13 at 13-14; Doc. 18-13 at
23, 25, 30, 33-34, Doc. 18-13 at 49, 51, 54, 56-57, 59-62, 64-65, 68, 73, 81, 86, 89; Doc. 18-14
at 31; Doc. 18-15 at 18, 24, 28, 31-34, 37, 49; Doc. 18-16 at 20-21.

 **C.** **The ALJ's Findings**

 In October 2016, the ALJ found that Plaintiff was not disabled under the Act. Doc. 18-3
at 22-35. The ALJ found that Plaintiff had the severe impairments of major depressive disorder,
anxiety, borderline personality disorder, and obesity, but Plaintiff's impairments failed to meet or

equal a listed impairment for presumptive disability under the regulations.  Doc. 18-3 at 24-27.

Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to

perform medium work except that she (1) could not work near hazards, including unprotected

heights and moving machinery parts; (2) could not drive as a job duty; (3) could have occasional

contact with coworkers or supervisors, but public contact should be incidental to her primary

jobs duties; (4) could not work on team tasks with coworkers; and (5) could understand,

remember, and carry out one- or two-step simple instructions.  Doc. 18-3 at 27.  The ALJ

concluded that while Plaintiff was unable to perform her past relevant work, she was capable of

performing other jobs existing in significant numbers in the national economy.  Doc. 18-3 at 33-

34.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C.

§ 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled: (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing her past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and RFC must be considered to determine if any

other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam)

(summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational

expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.

1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their

assessment of and citation to the evidence of record. The Court is not under any obligation to

probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the

movant and opponent of a motion for summary judgment must support their positions by "citing

to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III.    ARGUMENT AND ANALYSIS

### A.  Plaintiff's RFC

#### 1. *Physical RFC*

Plaintiff argues that the ALJ failed to consider her obesity and non-severe lower back impairment when determining that Plaintiff could perform a range of medium work, which includes lifting up to 50 pounds at a time, frequently lifting/carrying up to 25 pounds, standing/walking for up to six hours in an eight-hour workday, and frequently bending/stooping. Doc. 24-1 at 12-15 (citing 20 C.F.R. § 404.1567; SSR 83-10).

Defendant responds that the ALJ adequately considered Plaintiff's back pain in noting that her diagnostic imaging was generally unremarkable, her physical examinations were essentially normal, and her reported physical activity − including long walks, taking a dance class, and babysitting − suggested that she was not significantly limited by her back pain. Doc. 26 at 6-8. As for Plaintiff's obesity, Defendant asserts that the ALJ found that her obesity was a severe impairment and expressly found that the condition caused Plaintiff few physical problems when viewed against the backdrop of Plaintiff's tests, examinations, and activities, and there was no evidence or medical opinion suggesting that her obesity caused any functional limitations. Doc. 26 at 8-9.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). RFC refers to the

most that a claimant can do despite her physical and mental limitations.  20 C.F.R. §
404.1545(a).  The RFC is considered by the ALJ, along with the claimant's age, education and
work experience, in determining whether a claimant can work.  20 C.F.R. § 404.1520(a)(4).  In
assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of
an individual's impairments, even those that are not severe.  SSR 96-8p, 1996 WL 374184; 20
C.F.R. § 404.1523.  Finally, obesity is a medically determinable impairment that the ALJ must
consider, in combination with a claimant's other impairments, in assessing a claimant's RFC.  20
C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(Q) (2008); *Policy Interpretation Ruling: Titles II
and XVI: Evaluation of Obesity,* SSR 02-01p, 2000 WL 628049, at *6-7 (S.S.A. 2002); *Brown v.
Astrue*, No. 3:08-CV-0255-D, 2009 WL 64117, at *3 (N.D. Tex. Jan. 12, 2009) (Fitzwater, C.J.).

     As an initial matter, the ALJ plainly considered both Plaintiff's obesity and lower back
pain in addition to the combined effects of all her impairments – whether severe or not – in
assessing Plaintiff's RFC.  According to Plaintiff's testimony, she was 65 inches tall and
weighed 165 pounds at the time of the hearing, having lost 30 to 40 pounds in the two years prior
to the proceeding.  Doc. 18-3 at 29, 48-49.  The ALJ observed that Plaintiff's earlier weight,
however, resulted in a body mass index ("BMI") of 31, which is classified as obese.[2]  Doc. 18-3
at 29.  The ALJ then expressly "considered the effects of the claimant's obesity in formulating
the [RFC], specifically concerning the exertional limitations."  Doc. 18-3 at 28.  Nevertheless,

---

[2] The BMI for an individual who is 65 inches tall and weighs 165 pounds is 27.5,
however, and is classified as overweight rather than obese.
https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm?source=quickfitnesssol
utions  (last visited Aug. 15, 2018).

the ALJ, citing to Plaintiff's MRIs, x-rays, radiologist's notes, and other medical records, observed that her obesity had caused her few physical problems.  Doc. 18-3 at 28, 31.

Similarly, the ALJ acknowledged Plaintiff's lower back issues and the supporting medical records, but again noted that her examinations were often normal, she reported engaging in physical activities such as taking long walks and dancing, and Plaintiff's chiropractor observed that she exhibited a normal gait and coordination, permissibly leading the ALJ to conclude that Plaintiff had very few functional limitations stemming from either her obesity or her lower back pain.  Doc. 18-3 at 28, 31.

The ALJ also explicitly stated that he assessed the combined effect of all of Plaintiff's impairments when determining her disability status.  *See* Doc. 18-3 at 25 ("[T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404-1529 . . ."); Doc. 18-3 at 33 (stating that "[c]onsidering all of the evidence of record and construing it in a light most favorable to the claimant, the undersigned finds that the claimant's medically determinable impairment warrants a medium exertional level."). Accordingly, the ALJ adequately considered Plaintiff's obesity and lower back pain, in combination with her other impairments, in reaching his conclusion about her ability to do medium work.

For the same reasons, the ALJ's resulting RFC was supported by substantial evidence.  In addition to the aforementioned activities, Plaintiff acknowledged that she could prepare complete meals for her family, take care of her child, including school drop-off and pick-up, attend church, talk on the phone on a daily basis, wash dishes and clothes, clean the bathroom, pick up trash, drive, surf the internet, shop for several hours at a time, and walk for five miles without needing

to rest.  Doc. 18-7 at 29-34.  Because the ALJ properly considered the medical evidence as well

as Plaintiff's own statements about her abilities and assessed an RFC that is supported by

substantial evidence, she did not err in finding that Plaintiff is not disabled.  *Greenspan*, 38 F.3d

at 236.

　　　　Moreover, contrary to Plaintiff's representations, Doc. 24-1 at 14-15, this is not a case

where the ALJ substituted her own medical opinion for that of the doctors in assessing Plaintiff's

ability to perform the work functions necessary for performing a range of medium work.  *Cf.*

*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (holding that the absence of a medical source

statement describing the types of work that the claimant is still capable of performing does not

make the record incomplete if the ALJ's decision is otherwise supported by substantial evidence.

Further, Plaintiff cannot demonstrate that her substantial rights were affected by the ALJ's

decision not to seek a medical source statement from a treating physician because she did not

show that she "could or would have adduced evidence that might have altered the result."  *Kane*

*v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984).  The ALJ's decision is thus supported by

substantial evidence.

　　　　*2.  Mental RFC*

　　　　Plaintiff next asserts that the ALJ impermissibly failed to accommodate in Plaintiff's

RFC assessment her moderate difficulties in (1) social functioning, concentration, persistence, or

pace; (2) using judgment in making work-related decisions; (3) dealing with changes in routine

work settings; and (4) properly interacting with supervisors.  Doc. 24-1 at 15-16.  Additionally,

Plaintiff contends that the ALJ's restricting her to unskilled work does not address whether a job

entails only simple repetitive tasks because many such jobs require additional mental capacity.

Doc. 24-1 at 16-17.  Relatedly, Plaintiff maintains that the ALJ did not complete a function-by-

function assessment of her capability for work-related mental activities and failed to include in her hypothetical to the vocational expert ("VE") Plaintiff's acknowledged moderate limitations in concentration, persistence, and pace. Doc. 24-1 at 17-18, 21-22.

Defendant responds that the ALJ reasonably accounted for Plaintiff's moderate limitations in social functioning and concentration, persistence, or pace by limiting her to (1) only occasional contact with coworkers or supervisors; (2) only incidental public contact; (3) no team tasks with coworkers; and (4) one- to two-step, simple instructions. Doc. 26 at 9. Moreover, Defendant argues that the ALJ's hypothetical question to the VE reasonably incorporated the recognized limitations, and the AJL was not required to explicitly refer to Plaintiff's limitations in concentration, persistence, or pace in the RFC assessment. Doc. 26 at 9-10 (citing *Hardman v. Colvin*, 820 F.3d 142, 148-149 (5th Cir. 2016)). Defendant also notes that no further restriction relating to Plaintiff's contacts with supervisors was warranted because there was no evidence that Plaintiff had difficulties in that regard. Doc. 26 at 9-10.

At the administrative hearing, the ALJ asked the VE to consider a hypothetical person who could have occasional contact with coworkers or supervisors, only incidental pubic contact, an inability to complete team tasks, and the ability to understand, remember, and carry out one- to two-step simple instructions. Doc. 18-3 at 70. The VE concluded that such an individual could perform unskilled work such as a hand packager, industrial cleaner, and laundry worker. Doc. 18-3 at 70-71.

If a hypothetical question posed to the VE by the ALJ reasonably incorporates all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct any purported deficiencies in the ALJ's question, a determination of non-disability can stand. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001)

(citation omitted). Relatedly, if the ALJ considered the moderate restrictions in a claimant's concentration, persistence, or pace when determining the RFC, and this RFC finding is supported by substantial evidence as it is here, it is not necessary for the ALJ to explicitly include in her hypothetical a limitation on concentration, persistence, or pace. Herring v. Astrue, 788 F.Supp.2d 513, 518 (N.D. Tex. 2011).

In this case, the ALJ incorporated all of Plaintiff's recognized disabilities in her hypothetical question to the VE, and Plaintiff's representative had the opportunity to ask follow-up questions. Doc. 18-3 at 69-70, 72. As such, reversal on this ground is not warranted. *See Herring*, 788 F.Supp.2d at 519 (finding that the ALJ's hypothetical to the VE stating that the claimant could follow "short simple instructions in a simple and routine work environment" reasonably incorporated the claimant's moderate social functioning limitation); *Gipson v. Astrue, No. 10-CV-1413-BK, 2011 WL 540299, at *6-7 (N.D. Tex. Feb. 11, 2011)* (Toliver, J.) (finding that the ALJ reasonably incorporated the claimant's limitations in concentration, persistence and pace and her limited ability to work with others by instructing the VE that the claimant was only able to perform "simple work in which interaction with the public and co-workers is no more than incidental."). Further, the ALJ's assessment of Plaintiff's mental RFC was supported by substantial evidence. Aside from the above argument, Plaintiff's only real quibble with the ALJ's hypothetical question is that the ALJ failed to further limit her interactions with supervisors. However, no such restriction was warranted because Plaintiff acknowledged that she got along with authority figures. Doc. 18-7 at 34, 52.

Moreover, the ALJ adequately performed a function-by-function assessment in determining Plaintiff's RFC by noting, *inter alia*, that Plaintiff regularly attended group therapy, often reported spending time with family and friends, went to the park, attended a dance class,

12

went out regularly, could pay attention for an hour, finish what she started, enjoyed reading and crafts, and took walks. Doc. 18-3 at 26; *Wilson v. Colvin*, No. 3:15-CV-0031-BK, 2015 WL 6438245, at *5 (N.D. Tex. Oct. 22, 2015) (Toliver, J.) (finding function-by-function narrative discussion requirements satisfied where the ALJ implicitly considered the plaintiff's concentration and persistence and ability to understand, remember, and carry out instructions and act appropriately in a work setting when the ALJ noted that the plaintiff reported that she could pay attention all day and was good at following instructions, handling stress, and dealing with changes in routine). Accordingly, Plaintiff's claim on this basis fails.

### 3. Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ violated SSR 16-3p by assessing her credibility rather than focusing on, *inter alia*, (1) the intensity, persistence and limiting effects of her symptoms; (2) the totality of the medical evidence; (3) her work record and daily activities; (4) the duration, frequency, and intensity of her pain or other symptoms; and (5) the type, effectiveness, and side effects of her medication. Doc. 24-1 at 18, 21. Plaintiff also contends that the ALJ did not consider that she may be unable to work because of her mental impairments, which wax and wane and are demonstrated by her manic/depressive episodes, anxiety, crying spells, anger, frustration, violent episodes, impaired sleep, self-destructive behavior, suicidal ideation, fatigue, poor hygiene, impaired judgment, attention and insight, and avoidant behavior. Doc. 24-1 at 19-20. Plaintiff further asserts that the ALJ did not consider her difficulty performing school work and going to doctor's appointments due to her lack of motivation. Doc. 24-1 at 20. Defendant responds that the ALJ complied with SSR 16-3p when considering all of these factors. Doc. 11.

SSR 16-3p, effective in March 2016, describes how ALJs must evaluate claimants' symptoms and clarifies that "subjective symptom evaluation is not an examination of an

individual's character." SSR 16-3p, 2016 WL 1119029 at *1. Accordingly, in evaluating a claimant's symptoms, the ALJ cannot assess her overall character or truthfulness, but will instead focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and, given the adjudicator's evaluation thereof, whether the intensity and persistence of the symptoms limit the claimant's ability to perform work-related activities. SSR 16-3p, 2016 1119029 at *10.

Upon review, the Court concurs with Defendant that the ALJ complied with SSR 16-3p. First, the ALJ did not impugn Plaintiff's credibility in any fashion. Moreover, the ALJ complied with SSR 16-3p when she discussed (1) Plaintiff's daily activities, such as taking care of children and a pet, doing household chores, maintaining her personal hygiene, and making simple meals, Doc. 18-3 at 26, 28-31; (2) her pain and other symptoms, Doc. 18-3 at 25-26, 28, 30; (3) aggravating and precipitating factors regarding the symptoms, Doc. 18-3 at 28-30; (4) the effectiveness and side effects of Plaintiff's medications, Doc. 18-3 at 28-30; (5) additional treatment that Plaintiff received for her pain and other symptoms, including counseling and horse therapy, Doc. 18-3 at 28-31; and (6) how Plaintiff's mental impairments affect her RFC, Doc. 18-3 at 31. SSR 16-3p requires the ALJ to consider a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, which the ALJ must then juxtapose against the objective medical and other evidence of record. That is what the ALJ did in this case. There is no basis for reversal. See Anderson v. Berryhill, No. 3:16-CV-0853-BK, 2017 WL 3589543, at *5 (N.D. Tex. Aug. 18, 2017) (Toliver, J.). Accordingly, Defendant is entitled to summary judgment on this ground.

4.  *SSR 82-59*

Plaintiff next argues that the ALJ violated SSR 82-59 by using her non-compliance with prescribed treatment to discredit her subjective reports of disabling symptoms when she has a severe mental impairment and is unable to understand the consequences of failing to follow treatment instructions.  Doc. 24-1 at 20-21.  Defendant responds that SSR 82-59 does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Commissioner may deny benefits to an otherwise disabled person because they fail to comply with their physician's prescribed treatment.  Doc. 26 at 12.

In some cases, a finding of noncompliance with treatment will preclude a finding of disability.  *See* 20 C.F.R. § 404.1530; SSR 82-59.  Before making a finding of noncompliance, the ALJ is required to follow various requirements.  *See* SSR 82-59.  An ALJ is entitled to consider noncompliance when making a determination as to disability, without an analysis of the SSR 82-59 factors, if the noncompliance was considered only as part of the ALJ's credibility determination.  *See Robinson v. Astrue*, No. H-09-2497, 2010 WL 2606325, at *8 (S.D. Tex. June 28, 2010) (citing *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990) ("A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility.")). But, where "the ALJ relied almost exclusively on . . . noncompliance with prescribed treatment to determine Plaintiff's RFC, which provide[s] the basis for the decision that Plaintiff was not disabled," the ALJ should comply with the requirements found in SSR 82-59.  *Lindsey v. Astrue,* No. 3:09-CV-1649-BF, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011) (Stickney, J.); *see also Mitchell v. Colvin*, No. 3:11-CV-2664-BN, 2013 WL 4546729, at *7 (N.D. Tex. Aug. 28, 2013) (Horan, J.) (same).

15

In the present case, the ALJ considered several instances of Plaintiff's alleged noncompliance in the context of determining Plaintiff's RFC.  *See* Doc. 18-3 at 27-31 (ALJ's statement that she had considered Plaintiff's psychological symptoms and their effect on her functioning together, and noting several instances of Plaintiff's lack of compliance with treatment regime in the section of the ALJ's opinion explaining her basis for assessing Plaintiff's RFC).  As such, the principles contained in SSR 82-59 apply.  *See Lindsey,* 2011 WL 817173 at *8.  The Court only need remand, however, if it finds that the ALJ's failure to apply the rule prejudiced Plaintiff.  *See Ripley,* 67 F.3d at 557 n.22 (noting that prejudice can be established by showing that the claimant would have produced additional evidence that might have led to a different decision).

In this instance, the ALJ's failure to apply the principles in SSR 82-59 did not prejudice Plaintiff.  Pursuant to that rule, the ALJ can only make a determination that an individual failed to follow prescribed treatment after a finding that (1) the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity; (2) the impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; (3) treatment which is clearly expected to restore the claimant's capacity to engage in any substantial gainful activity has been prescribed by a treating source; and (4) the evidence of record discloses that the claimant has refused to follow prescribed treatment.  *See* SSR 82-59.

While the ALJ's opinion did not expressly address the SSR 82-59 factors, the undersigned concludes that any error in failing to do so was harmless.  The ALJ noted Plaintiff's sporadic non-compliance with attending therapy and taking her mental health medications, but correctly concluded that the non-compliance was due to Plaintiff feeling better and stating that

she was "coming out of depression."  Doc. 18-3 at 29; *see also* Doc. 18-3 at 30 (stating that exacerbation of Plaintiff's symptoms typically occurred when she was not completely adherent to her medication regimen or was experiencing an acute stressor in her life, but once medication was restarted or increased, her mood stabilized).

Under the circumstances, the record does not indicate a finding that Plaintiff "refused" treatment.  Rather, the ALJ's opinion and the record demonstrate that she most often was compliant with treatment and medications and only stopped intermittently when she felt she was well enough to do so or, once, when she feared gaining weight.  *See* Doc. 18-3 at 29 (noting that Plaintiff quit horse therapy because she felt she had "accomplished what she needed to"); Doc. 18-3 at 29 (noting that Plaintiff regularly attended individual and group therapy sessions per doctor's orders following her inpatient stay for psychiatric treatment); Doc. 18-3 at 29 (noting that Plaintiff's mental health symptoms were intermittent); Doc. 18-3 at 29 (noting that therapy records reflected that Plaintiff had been compliant with attending individual and group therapy and taking her medication as prescribed); Doc. 18-3 at 30 (noting that Plaintiff stopped taking her medication after several months "because she was feeling better"); Doc. 18-3 at 30 (after flare up of symptoms over a two-month period during which she did not take her medications, Plaintiff recommenced medication "on the encouragement of her mental health providers"); Doc. 18-3 at 30 (noting that Plaintiff continued with regular mental health care treatment during the subsequent months and reported medication compliance); Doc. 18-3 at 30 (noting that Plaintiff reported that "she voluntarily stopped taking her medication because she was feeling better."); Doc. 18-3 at 30 (stating that after Plaintiff's medication was increased, she was feeling well, was medication compliant, and continued to participate in her support group).

**B. The ALJ's Failure to Consider Whether Plaintiff Can Maintain Employment**

Plaintiff next asserts that because she experiences intermittent periods of incapacity due to her mental health problems, the ALJ was required to determine whether she can hold down a job for a significant period. Doc. 24-1 at 23-24. She maintains that her work history illustrates her inability to keep a job. Doc. 24-1 at 24-25. Defendant responds that there is no evidence in the record indicating that Plaintiff's mental impairment "waxes and wanes" or that she has good and bad days to the degree that she cannot sustain employment. Doc. 26 at 13.

The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986) (citation omitted). "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs." Id. at 822. A determination that the claimant can hold whatever job she finds for a significant period of time is also required, and that determination must be supported by medical evidence. Id.

Nevertheless, an ALJ need not make a separate finding in every case that a claimant who is capable of performing a job is also capable of maintaining that job. See Perez v. Barnhart, 415 F.3d 457, 465 (5th Cir. 2005). In certain instances, however, the nature of a claimant's medical impairment – and attendant symptoms – might require "separate consideration of whether the claimant is capable of maintaining employment." Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam) (citing Watson v. Barnhart, 288 F.3d 212, 217-218 (5th Cir. 2002)). Separate consideration is necessary, for instance, when "the claimant's physical ailment

waxes and wanes in its manifestation of disabling symptoms." *Id.* Furthermore, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Id.* "Where the record reasonably shows a disability claimant has the capacity to work, however, such a discussion of the claimant's ability to maintain employment is not needed." *Moore v. Barnhart*, 182 F. App'x 321, 323 (5th Cir. 2006) (per curiam) (citing *Frank*, 326 F.3d at 619).

The *Frank* court gave an example of the type of evidence that might require a separate finding regarding a claimant's ability to maintain employment: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." 326 F.3d at 619. On the other hand, a claimant's testimony that his back pain caused him to have both good and bad days "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*." *Perez, 415 F.3d at 465*; *see also* Halley v. Barnhart, 158 Fed. Appx. 645, 648 (5th Cir. 2005) (holding that the ALJ did not err in failing to address the claimant's ability to maintain employment where no physician pronounced the claimant unable to work because of her impairments, and her migraine headaches and panic disorder were unlike the claimant's loss of movement in *Watson* because they did not prevent her from working).

The Court agrees with Defendant on this point. Plaintiff fails to point to sufficient evidence showing that her mental health problems waxed and waned in their manifestation of disabling symptoms. The mere mention of mental health impairments in the medical record does not establish that Plaintiff is disabled. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Crainey v. Astrue*, No. 4:11-CV-613-A, 2012 WL 5846406, at *8 (N.D. Tex. Nov. 1,

19

2012) (Cureton, J.) (mere diagnosis of bipolar disorder was insufficient to show that claimant's bipolar disorder waxed and waned in its manifestation of disabling symptoms), *adopted by* 2012 WL 5860324 (N.D. Tex. Nov. 19, 2012) (McBryde, J.).  Instead, Plaintiff was required to point to medical evidence that her mental health symptoms waxed and waned in a manner that precluded employment, and this she has failed to do.  *Frank*, 326 F.3d at 619.

    On the contrary, the record evidence shows that Plaintiff's mental health symptoms did not wax and wane with the frequency or severity that would compromise her ability to maintain employment for a significant period.  *Frank*, 326 F.3d at 619.  As the ALJ noted, Plaintiff was generally compliant with her mental health care regimen and was only sporadically non-compliant when she reported feeling better and "coming out of depression."  Doc. 18-3 at 29; *see also* Doc. 18-3 at 30 (stating that exacerbation of Plaintiff's symptoms typically occurred when she was not completely adherent to her medication regimen or was experiencing an acute stressor in her life, but once medication was restarted or increased, her mood stabilized).  Additionally, neither Plaintiff's mental health treatment practitioners nor the psychological consultants indicated that Plaintiff could not work due to her allegedly waxing and waning symptoms.  In fact, the consultants agreed that Plaintiff could understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting.  Doc. 18-3 at 31.

    Lastly, as the ALJ noted, Plaintiff's reported activities of daily living do not comport with her allegations of disabling symptoms.  Doc. 18-3 at 30-31; *see Leggett*, 67 F.3d at 565 n.12 (finding consideration of claimant's daily activities is appropriate when deciding disability status).  For example, as recounted above and in relevant part, Plaintiff (1) had no anger outbursts or self-destructive or violent thoughts; (2) did not have any suicidal, depressive, or

manic symptoms; (3) her thought process was logical and goal-directed; (4) her memory/concentration/insight/ judgment were all intact; (5) she experienced no panic attacks; (6) her depression was stable; (7) she slept well when she was medication compliant; (8) she had a good appetite, improved mood, felt productive, and could do chores.  Plaintiff also traveled, walked her dog, spent time with friends and family, and took a dance class.  In short, while Plaintiff's symptoms worsened somewhat when she was not compliant with her treatment regimen, she has demonstrated repeatedly that she can comply with her prescribed regimen.  *But cf. Johnson v. Colvin*, No. 14-CV-4213-G, 2016 WL 791291, at *5 (N.D. Tex. Feb. 8, 2016) (Toliver, J.) (finding that claimant had presented sufficient evidence that her conditions waxed and waned where the record showed she spent 26 days in the hospital over a 21-month period, underwent numerous blood transfusions and insulin adjustments, and had monthly doctors' appointments to attend to her conditions), *adopted by* 2016 WL 775675 (N.D. Tex. Feb. 29, 2016) (Fish, J.).

### C.  The ALJ's Failure to Properly Consider Third-Party Report

Finally, Plaintiff asserts that the ALJ only considered Plaintiff's husband's reports regarding her limited abilities as an "afterthought" and essentially disregarded it.  Doc. 24-1 at 25-27.  Defendant responds that the ALJ explicitly considered Plaintiff's husband's report as it related to Plaintiff's daily living activities, symptoms, and related impairments, but permissibly gave his opinion little weight.  Doc. 26 at 14-15.

SSR 06-03p provides the framework under which the Commissioner must consider opinions and other evidence from sources who are not "acceptable medical sources."  2006 WL 2329939.  The rule provides that an "other source" may be the spouse of a claimant, but a spouse cannot establish the existence of a medically determinable impairment.  *Id*. at 2.  Nevertheless,

21

"other source" information can be based on one's special knowledge of the claimant and may provide insight into the severity of the impairment and how it affects the claimant's ability to function. *Id.* at *2. The rule provides that the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6.

The ALJ in this case correctly noted that Plaintiff's husband was not an acceptable medical source, but stated that she had considered his statements pursuant to SSR 06-03p, including his description of Plaintiff's symptoms and their effect on her ability to hold a job, complete tasks, concentrate, understand, follow instructions and get along with others. Doc. 18-3 at 32. However, the ALJ determined that Plaintiff's husband's opinion was entitled to little weight because it was based on casual observations and thus did not outweigh the objective findings and clinical observations in the record. Doc. 18-3 at 32-33. In doing so, the ALJ fully complied with SSR 06-03p, and nothing more was required.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 24, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 25 should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on August 20, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

23